IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MICHAEL MCHUGH,

                Plaintiff,

    v.

OFFICER KOONS, et al.,

                Defendants.

CIVIL ACTION
NO. 14-7165

## OPINION

**Slomsky, J.**                                    **December 30, 2015**

## I.   INTRODUCTION

Plaintiff Michael McHugh is a state prisoner at the Lehigh County Jail in Allentown, Pennsylvania. On December 17, 2014, Plaintiff filed an Application to Proceed In Forma Pauperis. (Doc. No. 1.) On January 25, 2015, his Application was granted (Doc. No. 6) and a Complaint (Doc. No. 7) was filed. The Complaint alleges various claims relating to a vehicle stop that led to Plaintiff's arrest on July 10, 2014. The following Defendants are named: Officer Ryan Koons ("Officer Koons"), Officer Damein Lobach ("Officer Lobach"), Assistant District Attorney Jay Jenkins ("Jenkins"), Sergeant Peter A. McAfee ("Sergeant McAfee"), Police Chief Joel Fitzgerald ("Chief Fitzgerald"), the Allentown Police Department, and the City of Allentown. (Doc. Nos. 7, 20.)

On March 24, 2015, Defendant Jenkins filed a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6). (Doc. No. 17.) On April 6, 2015, all other Defendants, including Officer Koons, Officer Lobach, Sergeant McAfee, Chief Fitzgerald, Allentown Police Department, and the City of Allentown (collectively, the "Police Defendants") filed a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6). (Doc. No. 20.) Following several Orders granting Plaintiff extensions of

time to file a response to the Motions to Dismiss, Plaintiff filed a Response to the Police Defendants' Motion to Dismiss on October 1, 2015.  (Doc. No. 28.)  The Police Defendants filed a Reply on October 8, 2015.  (Doc. No. 31.)  For reasons that follow, Defendant Jenkins' Motion to Dismiss (Doc. No. 17) will be granted in its entirety, and the Police Defendants' Motion to Dismiss (Doc. No. 20) will be granted in part and denied in part.

## II.    FACTUAL ALLEGATIONS

### a.  Plaintiff's Complaint

The following facts are taken from the Complaint and must be accepted as true for purposes of the Motions to Dismiss.  As noted, Plaintiff's allegations relate to a traffic stop that resulted in Plaintiff's arrest.  On July 10, 2014, Officers Koons and Lobach conducted a vehicle stop of Plaintiff's vehicle.  The Officers questioned Plaintiff about the condition, ownership, registration, and insurance of the vehicle.  (Doc. No. 7 ¶¶ 14-16.)  The vehicle lacked an ignition and was otherwise in disrepair.  (Id. ¶ 15.)  Plaintiff had a suspended license, and the vehicle did not have inspection stickers.  The Officers then requested that Plaintiff step out of the vehicle, and they conducted a search of the vehicle and Plaintiff.  (Id. ¶¶ 22-23.)

Plaintiff asked if he could have a licensed driver come to drive away the vehicle, but the officers informed him that it needed to be towed.  (Id. ¶ 25.)  Despite this need, Plaintiff telephoned a friend, Sue Carol, to request assistance, possibly with engaging a tow truck of Plaintiff's choice.  (Id. ¶¶ 25-26.)  During this telephone call, a tow truck summoned by the police arrived at the scene and began the process of towing the vehicle.  (Id. ¶ 27.)  Plaintiff asked the officers not to tow the vehicle.  (Id.)  Plaintiff alleges that Officer Koons then violently pushed him and shouted that he should leave the scene, causing Plaintiff to stumble backwards.  (Id.)  Plaintiff avers that he walked away but continued to ask that the vehicle not be towed and inquired about what would happen to the property inside the vehicle.  (Id. ¶ 30.)  At this point,

Plaintiff was 50 feet from Officer Koons and 150 feet from Officer Lobach.  (Id. ¶ 29.)  Plaintiff claims that Officer Koons then charged at Plaintiff by running toward him and striking him in the face, causing Plaintiff's head to strike the side of a parked minivan.  (Id. ¶¶ 31, 32.)  Officer Koons and Plaintiff fell to the ground, and Plaintiff alleges that Officer Koons repeatedly kneed Plaintiff in the side and back.  (Id.)  Plaintiff further asserts that during his ensuing arrest, he advised the Officers of a prior injury to his wrist, but he was nevertheless handcuffed too tightly, causing numbness and bleeding in his wrists.  (Id. ¶ 43.)

Plaintiff was then taken to the Allentown Police Department, where Officer Koons allegedly slammed Plaintiff into a glass window.  (Id. ¶¶ 36-37.)  While in custody, Plaintiff avers that he requested medical attention at the Allentown Police Department and at the Lehigh County Jail.  These requests were consistently denied or postponed.  (Id. ¶¶ 38-40.)  Plaintiff received an X-ray on October 1, 2014, three months after his arrest, which allegedly revealed some type of injury.[1]  (Id. ¶ 41; Ex. 6-A.)

Plaintiff brings this suit pursuant to 42 U.S.C. § 1983 and the supplemental jurisdiction of a federal court over related state law claims, and alleges the following causes of action:[2]

(1)   Count One:  Fourth Amendment claim for unlawful search and seizure, unlawful arrest, and false imprisonment, against Officer Koons;

---

[1]   Plaintiff alleges that his "jaw was neglected and because of this, the healing process was hindered" and he suffers from a "permanent disfiguring condition."  (Doc. No. 7 ¶ 41.)  Plaintiff, however, does not describe the injury.  In his Response to the Motion to Dismiss, Plaintiff claims that he suffered a "fractured jaw."  (Doc. No. 28 at 46.)

[2]   Plaintiff's claims are not numbered and do not specifically state which claims are against which Defendant(s).  For ease of reference, the Court will assign a Count number to each claim, in the order in which the claims are asserted in the Complaint.  The Court further will reference the name of the individual(s) or entity against which each count is asserted based on the information supplied by Plaintiff in each claim.

(2)    <u>Count Two</u>:  Fourth Amendment claim for use of excessive force, against Officer Koons;

(3)    <u>Count Three</u>:  Unlawful Search and Seizure pursuant to 42 U.S.C. § 1983, against Officer Koons and Officer Lobach;

(4)    <u>Count Four</u>:  Intentional Tort of False Imprisonment and Unlawful Arrest under Pennsylvania state law, against Officer Koons;

(5)    <u>Count Five</u>:  Assault and Battery, under Pennsylvania state law, against Officer Koons;

(6)    <u>Count Six</u>:  Civil Conspiracy to Conceal the Severity of Injuries, pursuant to 42 U.S.C. § 1983 and Pennsylvania state law, against Officer Koons and the Lehigh County Jail[3];

(7)    <u>Count Seven</u>:  Intentional infliction of emotional distress, under Pennsylvania state law, against Officer Koons;

(8)    <u>Count Eight</u>:  Civil Conspiracy and Collaborative Efforts, against Officer Lobach and Officer Koons[4];

(9)    <u>Count Nine</u>:  Prosecutorial Misconduct and Vindictiveness, pursuant to the Fifth Amendment due process clause and Sixth Amendment right to call witnesses, against prosecutor Jenkins;

(10)   <u>Count Ten</u>:  Municipal Liability for alleged indifference to constitutional rights, against the City of Allentown, the Allentown Police Department, Chief Fitzgerald, and Sergeant McAfee;

---

[3]    The Lehigh County Jail is not named as a Defendant in this action.

[4]    It is unclear whether this Count is based on Section 1983, state law, or both.

(11)   <u>Count Eleven</u>:  Fourteenth Amendment substantive due process pursuant to 42 U.S.C. § 1983, against all Defendants; and

(12)   <u>Count Twelve</u>:  Defamation, false light, invasion of privacy, and intentional infliction of emotional distress, pursuant to Pennsylvania state law, against all Defendants.

Plaintiff seeks compensatory damages, punitive damages, a declaratory judgment, and injunctive relief.

### b.    Additional Records Introduced by Defendants

The Police Defendants submitted with their Motion to Dismiss state court records regarding Plaintiff's arrest on July 10, 2014 and his subsequent conviction.  They are:  (1) <u>Exhibit A</u>: Plaintiff's Complaint, which attaches as exhibits the Investigative Report, Affidavit of Probable Cause, Arrest Report, Offense Report, an undated letter from Susan Carol[5] regarding the events surrounding Plaintiff's arrest, Lehigh County Department of Corrections Inmate Requests, a PrimeCare Medical Inc. Follow-Up Sheet indicating that Plaintiff had an X-Ray performed on October 1, 2014, and a stick figure sketch of the location of persons and objects presumably at the time of Plaintiff's arrest; (2) <u>Exhibit B</u>:  Court of Common Pleas of Lehigh County Criminal Docket in the case of <u>Commonwealth of Pennsylvania v. Michael Patrick McHugh Jr.</u>, Case No. CP-39-CR-3037-2014, and a Lehigh County Court of Common Pleas Court Summary of cases involving Plaintiff; (3) <u>Exhibit C</u>:  Affidavit of Probable Cause; and (4) <u>Exhibit D</u>:   the Allentown Police Department Offense Report, Arrest Report, and Prisoner Activity Report.  (Doc. No. 20-3 – 20-6.)

The Affidavit of Probable Cause submitted in support of Plaintiff's arrest on July 10, 2014 was completed by Officer Lobach and states, in relevant part, as follows:

---

[5]   Susan Carol is a friend of Plaintiff's, whom Plaintiff telephoned during the events leading to Plaintiff's arrest on July 10, 2014.  (Doc. No. 7 ¶ 26.)

3 - On July 10, 2014 your affiant was doubled with Officer Koons in a fully marked police vehicle and in full uniform when we observed a white Nissan Maxima traveling eastbound on Gordon St without rear lights with a loud exhaust. As your Affiant got closer to the vehicle it was found that the vehicle's rear bumper was hanging on by two pieces of wire.  It appeared that every panel of the vehicle had some short [sic] of damage. . . .

4 - When I approached the driver's side of the vehicle your affiant noticed there was no State Inspection sticker affixed to the windshield. The driver was identified as Michael P McHugh . . . When asked about about [sic] the extensive damage to the vehicle he responded "I'm working on it, stop messing with me". When asked about his inspection sticker? he replied, "the police took it".  While talking with McHugh his vehicle had shut off.  He asked if he could start the car back up?  McHugh then twisted and touched two wires below the dashboard to start the vehicle.

5 - When your affiant ran McHugh's information through Penn Dot he was found that his license was suspended.  McHugh was then asked to step out of the vehicle.  McHugh was advised the vehicle was being towed due to his suspended license, no inspection and it being an overall hazard.

6 - McHugh was told he was free to leave.  McHugh then paced up and down the southern sidewalk calling people on his cell phone.  Ross Towing arrived on scene to tow the vehicle and McHugh began yelling at police and the tow truck driver "we are not towing his vehicle!"  As the tow truck operator was attempting to hook up the vehicle, McHugh walked back in an aggressive manner yelling towards Ofc Koons to get to his vehicle. Ofc Koons told McHugh to "turn around, your [sic] under arrest".  McHugh disregarded and Ofc Koons went hands on with McHugh to take control to take control [sic] of his arms.  McHugh pulled away prompting Ofc Koons to take McHugh to the ground.   Your affiant then assisted in taking McHugh into custody.

7 - During the struggle with McHugh, Ofc Koons injuried [sic] his left lower leg. Ofc Koons seeked [sic] medical attention at St Lukes Hospital and it was found that he had a fractured Fibula.

(Doc. No. 7, Ex. 2; Doc. No. 20-5.)

The Allentown Police Department Prisoner Activity Report completed on July 10, 2014 states that Plaintiff was intoxicated, that he refused a health assessment, and that no physical problems were noticed.[6] (Doc. No. 20-6.)

As a result of the events surrounding Plaintiff's arrest on July 10, 2014, Plaintiff was charged with the following offenses: (1) Count I: Resisting Arrest pursuant to 18 Pa. C.S. § 5104; (2) Count II: Disorderly Conduct pursuant to 18 Pa. C.S. § 5503; (3) Count III: Operating a Vehicle Without a License pursuant to 75 Pa. C.S. § 1543; (4) Count IV: Subsequent Conviction General Offenses pursuant to 75 Pa. C.S. § 6503; (5) Count V: No Turn Signal pursuant to 75 Pa. C.S. § 4303; and (6) Count VI: Operating a Vehicle Without Valid Inspection pursuant to 75 Pa. C.S. § 4703. (Doc. No. 20-2 at 4; Doc. No. 20-4.) Following a jury trial, Plaintiff was found guilty on Counts I, II, III, and VI. (Id.) Count IV was withdrawn and Plaintiff was found not guilty on Count V. (Id.)

## III. STANDARD OF REVIEW

The motion to dismiss standard under Federal Rule of Civil Procedure 12(b)(6) is set forth in Ashcroft v. Iqbal, 556 U.S. 662 (2009). After Iqbal it is clear that "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice" to defeat a Rule 12(b)(6) motion to dismiss. Id. at 663; see Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ethypharm S.A. France v. Abbott Labs., 707 F.3d 223, 231 n.14 (3d Cir. 2013) (citing Sheridan v. NGK Metals Corp., 609 F.3d 239, 262 n.27 (3d Cir. 2010)). "A claim has facial plausibility when the plaintiff pleads

---

[6] On the Prisoner Activity Report, in response to the question regarding "Body deformity (trauma, bruising, lesions, ease of movement)," it is noted that Plaintiff "refused" to answer and "No problems [were] noticed". (Id.)

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."   Id.   Applying the principles of Iqbal and Twombly, the Third Circuit in Santiago v. Warminster Township, set forth a three-part analysis that a district court in this Circuit must conduct in evaluating whether allegations in a complaint survive a 12(b)(6) motion to dismiss:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim."  Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth."  Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

629 F.3d 121, 130 (3d Cir. 2010) (quoting Iqbal, 556 U.S. at 675, 679).   "This means that our inquiry is normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged."  Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011).

A complaint must do more than allege a plaintiff's entitlement to relief, it must "show" such an entitlement with its facts.  Fowler v. UPMC Shadyside, 578 F.3d 203, 210–11 (citing Phillips v. Cty. of Allegheny, 515 F.3d 224, 234–35 (3d Cir. 2008)).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not 'shown' — 'that the pleader is entitled to relief.'"  Iqbal, 556 U.S. at 679.  The "plausibility" determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Id.

When determining a motion to dismiss, the court must "accept all factual allegations in the complaint as true and view them in the light most favorable to the plaintiff."  Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006).  "A pro se complaint, 'however

inartfully pleaded,' must be held to 'less stringent standards than formal pleadings drafted by lawyers' and can only be dismissed for failure to state a claim if it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Estelle v. Gamble, 429 U.S. 97, 106 (1976) (internal citations omitted).

When considering a motion to dismiss, the Court may consider certain documents not made part of the Complaint.  As noted in Miller v. Cadmus Communications:

> Ordinarily, a court's review of a motion to dismiss is limited to the contents of the complaint, including any attached exhibits.   However, evidence beyond a complaint which the court may consider in deciding a 12(b)(6) motion to dismiss includes public records (including court files, orders, records and letters of official actions or decisions of government agencies and administrative bodies), documents essential to plaintiff's claim which are attached to defendant's motion, and items appearing in the record of the case.

Civil Action No. 09-cv-02869, 2010 WL 762312, at *2 (E.D. Pa. Mar. 1, 2010) (citing Kulwicki v. Dawson, 969 F.2d 1454, 1462 (3d Cir. 1992); Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d nn. 1-2 (3d Cir. 1995)); see also Doe v. Hesketh, 77 F. Supp. 3d 440, 445 (E.D. Pa. 2015).

## IV.    ANALYSIS

Plaintiff's federal claims against Defendants are based on 42 U.S.C. § 1983. "To state a § 1983 claim, a plaintiff must demonstrate the defendant, acting under color of state law, deprived [plaintiff] of a right secured by the Constitution or the laws of the United States." Chainey v. Street, 523 F.3d 200, 219 (3d Cir. 2008) (quoting Kaucher v. Cty. of Bucks, 455 F.3d 418, 423 (3d Cir. 2006)).   Thus, "[t]he first step in evaluating a [S]ection 1983 claim is to 'identify the exact contours of the underlying right said to have been violated' and to determine 'whether the plaintiff has alleged a deprivation of a constitutional right at all.'"   Id. (quoting Nicini v. Morra, 212 F.3d 798, 806 (3d Cir. 2000)).

**A.  Several Claims of Plaintiff Cannot Be Maintained Because They Are a Collateral Attack on His Underlying Convictions**

Certain claims of Plaintiff must be dismissed because they constitute a collateral attack on his convictions.  In Heck v. Humphrey, the United States Supreme Court held that "when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate the conviction or sentence has already been invalidated."  512 U.S. 477, 486–87 (1994).  Further, the Supreme Court held that:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.  A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983.  Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.  But if the district court determines that the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.

Id. (emphasis in original).  The Third Circuit has explained that the Heck decision was "based on the Supreme Court's desire to prevent parallel litigation over the issues of probable cause and guilt" and to "prevent the possibility of two conflicting resolutions arising out of the same successful prosecution, and preclude a convicted criminal defendant from collaterally attacking his conviction through the vehicle of a civil suit."  Perez v. Georgelis, 351 Fed. App'x 788, 790 (3d Cir. 2009).  The rule announced in Heck applies equally to claims for declaratory relief if

success on those claims would necessarily imply the invalidity of an intact conviction.  See Wilkinson v. Dotson, 544 U.S. 74, 81–82 (2005) ("[A] state prisoner's § 1983 action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)—if success in that action would necessarily demonstrate the invalidity of confinement or its duration.").

Given the above precepts, the following claims will be dismissed as barred by the ruling in Heck.

**(1)  Plaintiff's Claims for Unlawful Search and Seizure, Unlawful Arrest, and False Imprisonment (Counts One and Three) Will Be Dismissed**

Count One asserts a Fourth Amendment claim against Office Koons for an alleged unlawful search and seizure, unlawful arrest, and false imprisonment.  (Doc. No. 7 at 44.)  Count Three asserts a separate claim for an unlawful search and seizure pursuant to Section 1983, against Officers Koons and Lobach.[7]  (Doc. No. 7 at 46-49.)  These claims must be dismissed as they are collateral attacks on Plaintiff's conviction in violation of the holding in Heck, supra.

Plaintiff was found guilty of Resisting Arrest pursuant to 18 Pa. C.S. § 5104; Disorderly Conduct pursuant to 18 Pa. C.S. § 5503; Operating a Vehicle Without a License pursuant to 75 Pa. C.S. § 1543; and Operating a Vehicle Without Valid Inspection pursuant to 75 Pa. C.S. § 4703.  The facts that led to his convictions are set forth in the Probable Cause Affidavit and are in many respects similar to the facts that Plaintiff relies upon in his Complaint.  With regard to the allegedly unlawful search and seizure, Plaintiff does not dispute that there was probable cause for the initial stop.  (Doc. No. 28 at 8.)  Plaintiff admits that the vehicle was in "disrepair"

---

[7]   Plaintiff's claim of an unreasonable search and seizure appears to cover the seizure of both his person and the stop and seizure of his vehicle.  (Doc. No. 28 at 4-10.)

and lacked inspection stickers, and that Plaintiff's driver's license was suspended.  (Doc. No. 7 ¶¶ 15, 18, 21.)  Based on these facts, there was probable cause to stop, seize, and impound the vehicle.  The United States Supreme Court has expressly permitted a search of a vehicle when the vehicle is being impounded.  See South Dakota v. Opperman, 428 U.S. 364 (1976).

Moreover, Defendant was convicted of Resisting Arrest and Disorderly Conduct.   In Rosembert v. Borough of E. Lansdowne, the court held that "probable cause for a § 1983 unlawful arrest claim is [ ] established by guilty plea or conviction."  14 F. Supp. 3d 631, 641 (E.D. Pa. 2014) (quoting Ehly v. City of Philadelphia, 2004 WL 2583818, at *3 (E.D. Pa. Nov. 9, 2004)).  "Police only need probable cause to exist for one offense that could be charged under the circumstances."  Id. (citations omitted).   The crime of Resisting Arrest is defined as "with the intent of preventing a public servant from effecting a lawful arrest or discharging any other duty, the person creates a substantial risk of bodily injury to the public servant or anyone else, or employs means justifying or requiring substantial force to overcome the resistance."  18 Pa. C.S. § 5104.  In addition, in Ickes v. Grassmeyer, the court noted that "in order to establish that the arresting officers subjected [Plaintiff] to an 'unreasonable seizure' by placing him under arrest, [Plaintiff] 'would have to negate an element of the offense of which has been convicted,'" which is that the "underlying arrest must be lawful in order for an individual to commit the crime of 'resisting arrest.'"  30 F. Supp. 3d 375, 387 (W.D. Pa. 2014).  Therefore, his convictions necessarily show that he was lawfully arrested and imprisoned on July 10, 2014.[8]  Moreover, since the state court jury convicted Plaintiff of Resisting Arrest and Disorderly Conduct, it means

---

[8]   A false arrest is a necessary element of false imprisonment.  Rosembert v. Borough of East Lansdowne, 14 F. Supp. 3d 631, 641, n.8 (E.D. Pa. 2014).

that there was probable cause for his arrest and that his claims in this case for unlawful search and seizure, unlawful arrest, and false imprisonment amount to an attack on his convictions.

Plaintiff's convictions have not been reversed on appeal, expunged by executive order, declared invalid by an authorized state tribunal, or called into question by the grant of a writ of habeas corpus.  Consequently, Plaintiff's claims against Officer Koons and Officer Lobach under Counts One and Three for an alleged unlawful search and seizure, unlawful arrest, and false imprisonment violate the <u>Heck</u> rule and must be dismissed.

### (2) Plaintiff's Claim for Fourteenth Amendment Substantive Due Process (Count Eleven) Will Be Dismissed

Count Eleven asserts a Fourteenth Amendment Substantive Due Process claim against all Defendants.  (Doc. No. 7 at 69.)  Plaintiff claims that Defendants violated his right to liberty by: (1) obstructing justice; (2) improperly interfering with an official investigation; (3) tampering with a witness; (4) intimidating and failing to properly interview a witness, depriving him of his rights guaranteed by Pennsylvania state law and the Constitution of the Commonwealth of Pennsylvania; (5) filing a false police report and/or evidence; and (6) conspiring to take the aforementioned actions.  (<u>Id.</u>)  Plaintiff does not expand on these allegations.  Considering them individually or in their totality, all of these allegations amount to an attempt to overturn his criminal convictions and are barred by <u>Heck</u>, <u>supra</u>.

To the extent that Plaintiff is alleging that these claims cover an excessive force violation, they cannot be brought under the Fourteenth Amendment.  <u>See</u> <u>Toth v. Bristol</u>, 215 F. Supp. 2d 595, 600 n.4 (E.D. Pa. 2002) (quoting <u>Mellott v. Heemer</u>, 161 F.3d 117, 121 (3d Cir. 1998) ("The Supreme Court has instructed that 'all claims that law enforcement officers have used excessive force . . . in the course of a . . . seizure of a free citizen should be analyzed under the Fourth

13

Amendment and its reasonableness standard, rather than under a substantive due process approach.")

Accordingly, Plaintiff's Fourteenth Amendment claim will be dismissed as to all Defendants.

### (3)  Plaintiff's Claims for False Imprisonment and Unlawful Arrest (Count Four) Will Be Dismissed

Count Four alleges claims for the intentional torts of false imprisonment and unlawful arrest against Officer Koons, for allegedly making an arrest without probable cause.  (Doc. No. 7 at 50.)  Initially, as noted, "false arrest and false imprisonment are essentially the same claim." Kokinda v. Breiner, 557 F. Supp. 2d 581, 593 (M.D. Pa. 2008) (quoting Olender v. Twp. of Bensalem, 32 F. Supp. 2d 775, 791 (E.D. Pa. 1999)).  To prove a claim of false imprisonment under Pennsylvania law, Plaintiff must show:  "(1) the detention of another person, and (2) the unlawfulness of such detention." Id. (quoting Renk v. City of Pittsburgh, 537 Pa. 68 (1994)).  To show false arrest, Plaintiff would have to show that the arrest was made without probable cause. Id.  Moreover, "Pennsylvania state law false arrest claims and federal constitutional false arrest claims are co-extensive as to both elements of proof and damages."  Id. (quoting Russoli v. Salisbury Twp., 126 F. Supp. 2d 821, 869 (E.D. Pa. 2000)).

As probable cause has been established for Plaintiff's arrest based on his convictions, as noted above, Plaintiff is precluded from asserting a claim for false arrest and false imprisonment. These claims are nothing more than an attack on his convictions for Resisting Arrest and Disorderly Conduct.  These convictions are still outstanding and the jury found that there was probable cause for the arrest.  See Kist v. Fatula, Civil Action No. 3:2006-67, 2007 WL 2404721, at *7 (W.D. Pa. 2007) ("when bringing a state tort claim, a plaintiff is not then permitted to

'collaterally attack' his underlying criminal conviction or 'deny his criminal acts'").  Thus, there is no plausible basis for these claims and Count Four will be dismissed against Officer Koons.

### B.  Plaintiff's Claims for Defamation, False Light, Invasion of Privacy, and Intentional Infliction of Emotional Distress (Count Twelve) Will Be Dismissed

Count Twelve asserts a claim for defamation, false light, invasion of privacy, and intentional infliction of emotional distress, pursuant to state law, against all Defendants.  These claims are contained in a single sentence, and Plaintiff merely states that he asserts these causes of action.  (Doc. No. 7 ¶ 70.)  Plaintiff does not allege any facts which would support a finding for any of the aforementioned causes of action, with the exception of Plaintiff's claim for intentional infliction of emotional distress against Officer Koons which is set forth in a separate Count and will be addressed separately below.  Viewing the Complaint in the light most favorable to Plaintiff, the Court cannot ascertain any facts which would support a claim for these torts, except to assume that Plaintiff bases his claims for defamation, false light, and invasion of privacy on his alleged unlawful arrest and false imprisonment.  These claims are negated by Plaintiff's convictions.

Furthermore, any statements made in the course of his criminal proceeding are absolutely privileged.  "It has long been the law of Pennsylvania that statements made by judges, attorneys, witnesses and parties in the course of or pertinent to any stage of judicial proceedings are absolutely privileged and, therefore, cannot form the basis for liability for defamation." Schatzberg v. State Farm Mut. Auto. Ins. Co., 877 F. Supp. 2d 232, 246-47 (E.D. Pa. 2012) (citing Pawlowski v. Smorto, 588 A.2d 36, 41 (Pa. 1991); Binder v. Triangle Publ'ns, Inc., 275 A.2d 53, 56 (Pa. 1971) ("All communications pertinent to any stage of a judicial proceeding are accorded an absolute privilege which cannot be destroyed by abuse.")).

As such, Plaintiff's Count Twelve for defamation, false light, invasion of privacy, and intentional infliction of emotional distress will be dismissed against all Defendants in their entirety.[9]

### C. Plaintiff's Claim for Prosecutorial Misconduct Against Jenkins (Count Nine) Will Be Dismissed

Count Nine asserts a claim for "Prosecutorial Misconduct and Vindictiveness" against Defendant Jenkins, the prosecutor in Plaintiff's state criminal case.  Plaintiff claims his Sixth Amendment right to call witnesses was violated because Jenkins "approached Plaintiff's witness, Sue Carol, in an intimidating manner" and "told her that if she [testified on Plaintiff's behalf], he would increase McHugh's driving while under suspension charge to include the habitual offender statute."  (Doc. No. 7 ¶¶ 62.)  He claims this conduct gave the appearance of retaliation, and that his "intentions and motivations were purely vindictive."  (Id. ¶ 65.)  Plaintiff sues Jenkins in his individual and official capacities, apparently under 42 U.S.C. § 1983.  (Id. ¶ 10.)

Plaintiff's claim against Jenkins in his individual capacity fails because Jenkins is entitled to prosecutorial immunity.  Prosecutors enjoy "absolute immunity from 1983 suits for damages when he acts within the scope of his prosecutorial duties."  Imbler v. Pachtman, 424 U.S. 409, 420 (1976).  "In initiating a prosecution and in presenting the State's case, the prosecutor is immune from a civil suit for damages under Section 1983."  Id. at 431.  In this regard, Plaintiff's claims about his statements to witness Carol involve his criminal prosecution and could have been raised during the criminal case if he felt that Jenkins was acting improperly.  Short of this action, the facts show that Jenkins was interviewing a potential witness, discussing the case with her, and acting in his capacity as a prosecutor.  The broad absolute immunity afforded a prosecutor under these circumstances bars a civil suit against Jenkins.

---

[9]   Count Twelve will be dismissed against Officer Koons because it is duplicative of the same claim made against Officer Koons in Count Seven, which is addressed separately below.

Absolute immunity shields prosecutors from § 1983 liability acts associated with their function as an advocate, regardless of motivation.  Dory v. Ryan, 25 F.3d 81, 83 (2d Cir. 1994).  In fact, prosecutors are entitled to absolute immunity even where a defendant alleges that he or she was prosecuted in bad faith or for improper purposes.   Imbler, 424 U.S. at 425-28.  "Frequently acting under serious constraints of time and even information, a prosecutor inevitably makes many decisions that could engender colorable claims of constitutional deprivation."  Id. at 425.  "Defending these decisions, often years after they were made, could impose unique and intolerable burdens upon a prosecutor responsible annually for hundreds of indictments and trials."  Id. at 425-26.

Plaintiff's claims against Jenkins are based upon alleged conduct that is entitled to absolute immunity.  All of his claims relate to the initiation and prosecution of his case by Jenkins.  See, e.g., Dory, 25 F.3d at 83 (prosecutor who allegedly coerced witnesses to commit perjury at trial and who withheld exculpatory material from the defense was entitled to absolute immunity); Brawer v. Horowitz, 535 F.2d 830 (3d Cir. 1976) (prosecutor absolutely immune for conspiring to use perjured testimony and withholding exculpatory evidence).

Furthermore, Plaintiff's claims against Jenkins are barred by the Heck doctrine for the reasons discussed above.  A finding for Plaintiff on these allegations would necessarily imply the invalidity of his state conviction, which has not been reversed, expunged, declared invalid, or called into question by a federal court's issuance of a writ of habeas corpus.  Heck, 512 U.S. at 486-87.

Finally, Plaintiff's claim against Jenkins in his official capacity also fails because "official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent."  Monell v. Dept. of Soc. Servs., 436 U.S. 658, n.55

(1978).  An official capacity suit against a prosecutor is essentially a municipal liability claim against the District Attorney's Officer pursuant to Monell.  Even if, in Count Nine, the District Attorney's Office was substituted for Jenkins as the defendant, this claim would still fail.  There are two reasons for this outcome:  (1) Jenkins is not a policymaker for the District Attorney's Office; and (2) Plaintiff has not sufficiently alleged an unconstitutional policy or custom.

First, Jenkins does not have policymaking authority for the District Attorney's Office.  See Kis v. Cty of Schuylkill, 866 F. Supp. 1462, 1479 (E.D. Pa. 1994) ("The Supreme Court has clearly stated that only those municipal officers and employees who have final policymaking authority can by their actions subject their municipal employers to § 1983 liability."); Payson v. Ryan, Civ. A. No. 90-1873, 1992 WL 111341, at *11 (E.D. Pa. May 14, 1992) (finding that in Pennsylvania, assistant District Attorneys do not have policymaking authority).  Jenkins is neither the District Attorney, nor the First District Attorney for the Lehigh County District Attorney's Office, the persons with policymaking authority.  (Doc. No. 17 at 9-10.)  Therefore, as an assistant District Attorney, Jenkins does not have policymaking authority.

Second, a viable Monell claim against the District Attorney's Office or its prosecutors must allege an action that "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers" or a "governmental 'custom.'"  Monell, 436 U.S. at 690-91.  Plaintiff does not allege any such policy or custom.  For all the foregoing reasons, the claims against Jenkins will be dismissed in their entirety.

**D.  Plaintiff's Claims against the Allentown Police Department Will Be Dismissed**

It is well settled in the Third Circuit that "police departments cannot be sued in conjunction with municipalities, because the police department is merely an administrative arm of the local municipality, and is not a separate judicial entity."  Sanford v. City of Scranton, No. 3:06-CV-0739, 2006 WL 3242113, at *3 (M.D. Pa. Nov. 7, 2006) (quoting Padilla v. Twp. Of

18

Cherry Hill, 110 Fed. App'x 272, 278 (3d Cir. 2004)); see also Irvin v. Borough of Darby, 937 F. Supp. 446, 450 (E.D. Pa. 1996).  Therefore, since the Allentown Police Department is merely an arm of the City of Allentown, Plaintiff's claims against the Allentown Police Department will be dismissed.

### E.  Plaintiff's Claims against the City of Allentown, Chief Fitzgerald, and Sergeant McAfee (Count Ten) Will Be Dismissed

Plaintiff alleges that the City of Allentown, Chief Fitzgerald, and Sergeant McAfee "implemented and maintained policies within the police department that created deliberate indifference toward the constitutional rights of the citizens of Allentown;" "failed to properly train the officers about the dangers of using excessive force . . . and on how and when to be attentive to detainees who are injured," and "failed to adopt or enforce policies intended to avoid constitutional violations."  (Doc. No. 7 ¶ 66.)  Plaintiff further claims that the "lack of audio and video surveillance equipment in the police vehicles and on the officers' person shows a lack of regard for accuracy and truthfulness during the arrest process."  (Id. ¶ 67.)  Additionally, Plaintiff avers that the police department has a "policy of turning away citizens who are attempting to enter a complaint against an officer," because Plaintiff's "witness, Sue Carol, attempted to file a complaint, but was turned away."  (Id. ¶ 68.)

In Monell, the Supreme Court held that municipal entities are subject to Section 1983 liability only under limited circumstances.  436 U.S. 658, 690 (1978).  A plaintiff may bring a Section 1983 claim for damages against a local government entity only when the alleged unlawful action was taken pursuant to a policy or custom of the municipality, not when the action was a random act of an official.  Id. at 690-91.  "[T]he action that is alleged to be unconstitutional [must] implement[ ] or execute[ ] a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers . . . [or] pursuant to

19

governmental 'custom' even though such a custom has not received formal approval through the body's official decision making channels." Id.; see also Williams v. Borough of W. Chester, Pa., 891 F.2d 458, 467 (3d Cir. 1989) (dismissing a suit against a city for the acts of one of its police officers).

Accordingly, Plaintiff's § 1983 claim against Defendant City of Allentown is viable only if he claims that the actions of the police officers were taken pursuant to an unlawful policy or custom of the City. Plaintiff's bare assertions of alleged unlawful policies do not suffice to withstand a motion to dismiss. Plaintiff has not provided any support for this claim beyond the alleged circumstances of his case. A claim of a single incident does not provide sufficient basis to prove a policy. Sanford v. City of Scranton, No. 3:06-CV-0739, 2006 WL 3242113, at *3-4 (M.D. Pa. Nov. 7, 2006) (citations omitted). In addition, with respect to training employees, the United States Supreme Court stated in Connick v. Thompson:

> A pattern of similar constitutional violations by untrained employees is "ordinarily necessary" to demonstrate deliberate indifference for purposes of failure to train. Bryan Cty., 520 U.S., at 409, 117 S.Ct. 1382. Policymakers' "continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action—the 'deliberate indifference'—necessary to trigger municipal liability." Id., at 407, 117 S.Ct. 1382. Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights.

563 U.S. 51, 62 (2011). Plaintiff has not alleged a plausible factual pattern of conduct here by the City of Allentown that would reach the Monell standard. Consequently, Plaintiff's claim against Defendant City of Allentown for violation of his civil rights pursuant to Section 1983 will be dismissed.[10]

---

[10]   To the extent Plaintiff alleges any other state law claims against the City of Allentown, the City is immune from liability for damages caused by agency employees pursuant to the

In addition, Plaintiff made no individual allegations against Chief Fitzgerald or Sergeant McAfee.  Put simply, they were not involved at all in the events of July 10, 2014 or Plaintiff's arrest.   In order to establish liability under § 1983, each individual defendant must have "personal involvement in the alleged wrongs," which may be shown by "defendant's participation in or actual knowledge of and acquiescence in the wrongful conduct." Chavarriaga v. State of New Jersey Dept. of Corrs., 806 F.3d 210, 222 (3d Cir. 2015).

In Plaintiff's Response to the Motion to Dismiss, Plaintiff asserts liability against Chief Fitzgerald and Sergeant McAfee on the basis of them being policymakers and on the basis of supervisory liability.  (Doc. No. 28 at 42-43.)  "Liability may be imposed on an official with final policymaking authority if that official establishes an unconstitutional policy that, when implemented, injures a plaintiff." Chavarriaga, 806 F.3d at 223.  The plaintiff must "allege and prove that the official established or enforced policies and practices directly causing the constitutional violation." Id.  As noted, Plaintiff has not set forth any allegations of personal involvement by either Chief Fitzgerald or Sergeant McAfee.  Additionally, Section 1983 actions cannot be based on a respondeat superior theory.  Monell, 436 U.S. at 691; Chavarriaga, 806 F.3d at 222 (citing Parratt v. Taylor, 451 U.S. 527, 537 n.3 (1981)).

Therefore, all claims against Defendants City of Allentown, Chief Fitzgerald, and Sergeant McAfee will be dismissed in their entirety.

---

Pennsylvania Political Subdivision Tort Claims Act, 42 Pa. Const. Stat. §§ 8541-42.  None of the eight statutory exceptions apply in this case.

### F. Plaintiff's Claims for Excessive Force (Count Two), Assault and Battery (Count Five), and Intentional Infliction of Emotional Distress (Count Seven) against Officer Koons Will Not Be Dismissed

#### (1) Fourth Amendment Excessive Force Claim (Count Two)

Under Section 1983, Plaintiff alleges a claim for excessive force being used against him by Officer Koons in violation of the Fourth Amendment.  Officer Koons argues to the contrary that this Count must be dismissed because Plaintiff is collaterally estopped from challenging the facts underlying his criminal conviction.  (Doc. No. 20-2 at 13.)  Officer Koons relies on the Affidavit of Probable Cause and Plaintiff's convictions for Resisting Arrest and Disorderly Conduct.  Officer Koons further argues in the Reply Brief that Plaintiff raised the defense of self-defense and set forth his version of the facts during his criminal trial, and the jury rejected his claim.  (Doc. No. 31 at 4-5.)

However, in Ickes v. Grassmeyer, the court held:

> The "reasonableness" of a seizure depends not only on whether it is constitutionally justified, but also on "how it is carried out."  A police officer violates the Fourth Amendment when he or she uses "excessive force" to effect an otherwise lawful seizure.  Since a *lawful* arrest can sometimes be carried out in an *unlawful* manner, an individual convicted of resisting arrest under Pennsylvania law is not foreclosed from bringing an "excessive force" claim under § 1983.  The averments in [plaintiff's] complaint suggest that some of his Fourth Amendment claims are based on the idea that the arresting officers used an 'unreasonable' amount of force while taking him into custody.  To the extent that [plaintiff's] Fourth Amendment claims are grounded in a theory of "excessive force," they are not barred by Heck.

30 F. Supp. 3d 375, 387-88 (W.D. Pa. 2014) (emphasis in original) (citations omitted).

Plaintiff asserts that Officer Koons: "violently pushed McHugh"; "charged McHugh by running toward him" from fifty-feet away; struck Plaintiff in the face causing Plaintiff's head to strike the side of a parked minivan; "repeatedly kneed" Plaintiff in the side and back; handcuffed too tightly, and "slammed [Plaintiff] into the glass window at the entrance of the police station." (Doc. No. 7.)  At this stage of the litigation, the Court must accept Plaintiff's allegations as true.

22

Plaintiff has plausibly stated a claim for excessive force in violation of the Fourth Amendment against Officer Koons.  Therefore, the Motion to Dismiss Plaintiff's claim for excessive force against Officer Koons in his individual capacity will be denied.[11]

### (2)  Assault and Battery (Count Five)

In Count Five, Plaintiff asserts a state law claim of assault and battery against Officer Koons.  An assault is "an intentional attempt by force to do injury to the person of another and a battery is committed whenever the violence menaced in an assault is actually done, though in ever so small a degree, upon the person."  Rosembert, 14 F. Supp. 3d at 644.

In support of this claim, Plaintiff relies on the same allegations that support his claim for excessive force.  Plaintiff further alleges Officer Koons "willfully and intentionally assaulted and battered Plaintiff without prior provocation."  (Doc. No. 7 ¶ 77.)  Plaintiff alleges that he has suffered "serious injuries to the bones, muscles, blood vessels, tissues, nerves, tendons and nervous system of his face, including apprashions [sic] to both wrists and reinjury to Plaintiff's right wrist."  (Id. ¶ 78.)  At this stage, accepting the allegations as true, Plaintiff has plausibly set forth a claim for assault and battery against Officer Koons.

Officer Koons argues that he is immune from liability pursuant to the Pennsylvania Political Subdivision Tort Claims Act.  Pursuant to the Act, "except as otherwise provided in this subchapter, no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person."  42 Pa. Cons. Stat. § 8541.  Pursuant to 42 Pa. Cons. Stat. § 8545, individual officers are immune

---

[11]  Defendant Koons attaches to his Reply Brief testimony of Plaintiff at trial, contending that Plaintiff's testimony amounted to self-defense which was rejected by the jury (Doc. No. 31, Ex. E).  In his testimony, Plaintiff states, "and then in like self-defense I defended myself without the use of force."  While Plaintiff was providing testimony on his conduct on July 10, 2014, this does not mean that Officer Koons was not using excessive force.  Like a Resisting Arrest conviction, an assertion of self-defense that is rejected by a jury does not preclude a civil claim for use of excessive force.

23

for any acts performed within the scope of their employment.  However, this grant of immunity does not apply where the alleged conduct involves a "crime, actual fraud, actual malice, or willful misconduct."  42 Pa. Cons. Stat. § 8550.  To establish willful misconduct, it must be shown that the officer "intended to commit the intentional tort."  Pettit v. Namie, 931 A.2d 790, 801 (Pa. 2007).

Accepting Plaintiff's allegations as true, Plaintiff has plausibly asserted that Officer Koons engaged in willful misconduct by the assault and battery, and therefore, this claim will not be dismissed.

### (3)  Intentional Infliction of Emotional Distress (Count Seven)

In Count Seven, Plaintiff asserts a state law claim of intentional infliction of emotional distress against Officer Koons.  Under Pennsylvania law, a claim for intentional infliction of emotional distress requires a plaintiff to prove: (1) the conduct must be extreme or outrageous; (2) the conduct must be intentional or reckless; (3) it must cause emotional distress; and (4) the distress must be severe.[12]  Rosembert, 14 F. Supp. 3d at 645 (citation omitted).  Extreme and outrageous is defined as "conduct so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society."  Id.  Pennsylvania courts require a plaintiff to provide evidence of a physical injury caused by the defendant's conduct.  Id. at 646.

At this stage of the proceedings, Plaintiff has plausibly asserted the elements of a claim for intentional infliction of emotional distress against Officer Koons in his individual capacity. Plaintiff alleges that Officer Koons' actions were "intentional and reckless," and that Officer

---

[12]  While the Pennsylvania Supreme Court has not expressly adopted a claim for intentional infliction of emotional distress, Pennsylvania courts generally assume that a claim exists and apply the elements of such a claim as set forth in the Restatement (Second) of Torts § 46. These elements are taken from the Restatement.

Koons made a "deliberate decision to use excessive force."  (Doc. No. 7 ¶ 56.)  Plaintiff avers that Officer Koons violently pushed Plaintiff, charged at him by running towards him and striking him in the face, causing Plaintiff's head to strike the side of a parked minivan, repeatedly kneed Plaintiff in the side and back, and slammed Plaintiff into a glass window at the Police Department.    Plaintiff argues that he has suffered emotional distress, humiliation, embarrassment, financial loss, mental anguish, and loss of enjoyment of life, and that he is in continual fear of physical harm.  (Id. ¶¶ 84, 87, 89.)  Plaintiff further alleges that he is "haunted by memories of being brutalized," has sought medical treatment and takes a variety of psychiatric medication, now has a deep mistrust and fear of law enforcement, and will need ongoing psychological treatment.  (Id. ¶¶ 58-59.)  As such, Plaintiff has plausibly asserted a claim for intentional infliction of emotional distress against Officer Koons.  See Kokinda v. Breiner, 557 F. Supp. 2d 581, 595 (M.D. Pa. 2008).

Moreover, actions constituting intentional infliction of emotional distress necessarily constitute willful misconduct.  Id.  Therefore, the Pennsylvania Political Subdivision Tort Claims Act does not shield Officer Koons from the intentional infliction of emotion distress claim.

### (4)  Claims against Officer Koons in his Official Capacity Will Be Dismissed

Plaintiff's claims against Officer Koons in his official capacity must be dismissed because suits against municipal employees in their official capacities are "treated as claims against the municipal entities that employ these individuals." Smith v. School Dist. of Philadelphia, 112 F. Supp. 2d 417, 425 (E.D. Pa. 2000).  "In a suit against a government official in his official capacity, 'the real party in interest . . . is the governmental entity and not the named official.'"  Id. at 424 (quoting Hafer v. Melo, 502 U.S. 21, 25 (1991)).

### G.  Plaintiff's Claims against Officer Lobach Will Be Dismissed

All of Plaintiff's claims against Officer Lobach will be dismissed.[13]  Plaintiff has failed to allege any facts which would support claims against this Defendant.  In fact, Plaintiff admits that Officer Lobach did not touch Plaintiff.  (Doc. No. 28 at 19.)  Plaintiff does not allege any specific wrongdoing on the part of Officer Lobach.

In his Response to the Motion to Dismiss, Plaintiff claims that Officer Lobach aided and abetted and conspired with Officer Koons to commit the assault and battery.  (Doc. No. 28 at 19-22.)  No facts are alleged in the Complaint to support this claim.  Moreover, Pennsylvania does not recognize a cause of action for failing to intervene.  Thomas v. Philadelphia, 574 A.2d 1205, 1206 (Pa. Commw. Ct. 1990) ("There is generally no duty resting on a municipality or other governmental body to provide police protection to any particular person.  An individual's injury resulting from a police officer's failure to prevent or ameliorate a crime must be redressed through public prosecution, and not in a private suit for monetary damages. . . .  The two situations that provide exceptions to the no-duty rule are (1) to protect individuals who have aided law enforcement as informers or witnesses; or (2) where the police have expressly promised to protect specific individuals from precise harm.") (citations omitted).  Neither exception applies here.

Furthermore, claims against Officer Lobach in his official capacity will be dismissed for the same reasons as set forth above as to Officer Koons.  Accordingly, the Motion to Dismiss claims against Officer Lobach will be granted in its entirety.

---

[13]   Based on a review of the Complaint, it appears that Plaintiff asserts the following claims against Officer Lobach:   Count Three: unlawful search and seizure; Count Eight:  Civil Conspiracy; Count Eleven: Fourteenth Amendment substantive due process; Count Twelve: Defamation, false light, invasion of privacy, and intentional infliction of emotional distress. These claims are all addressed in separate sections above.  To the extent Plaintiff asserts any additional claims against Officer Lobach, those claims will be dismissed as well.

**H.  Plaintiff's Claims for Civil Conspiracy (Counts Six and Eight) Will Be Dismissed**

Plaintiff alleges two civil conspiracy claims.  Count Six asserts a claim for Civil Conspiracy to Conceal the Severity of Injuries, pursuant to Section 1983 and state law, against Officer Koons and the Lehigh County Jail.  In support of this count, Plaintiff alleges that Officer Koons and the Lehigh County Jail conspired to deprive him of access to medical care and fabricated information on the police report.  (Doc. No. 7 ¶ 54.)  Count Eight brings a claim for Civil Conspiracy and Collaborative Efforts against Officers Koons and Lobach.  It is unclear whether this claim is brought pursuant to Section 1983, state law, or both.  In support of this claim, Plaintiff appears to allege that Officer Lobach created a false police report and that he "may have conspired with Officer Koons in an attempt to cover up the misconduct through an improper investigation and criminal prosecution."  (Id. ¶¶ 60-61.)

To state a claim for conspiracy under Section 1983, "a plaintiff must establish (1) the existence of a conspiracy involving state action; and (2) a deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy."  Rosembert, 14 F. Supp. 3d at 647 (citation omitted).  "A plaintiff must allege that there was an agreement or meeting of the minds to violate his constitutional rights."  Id.  "To withstand a motion to dismiss, a complaint alleging a civil rights conspiracy should identify with particularity the conduct violating plaintiff's rights, the time and place of these actions, and the people responsible therefore."  Id. at 648.  "Specific allegations of an agreement to carry out the alleged chain of events is essential in stating a claim for conspiracy."  Id.

To state a claim for civil conspiracy under Pennsylvania law, Plaintiff must allege that "two or more defendants 'acted in concert to commit an unlawful act or [to commit] a lawful act by unlawful means, and that they acted with malice.'"  Ickes, 30 F. Supp. 3d at 402 (citation omitted).

Because the claims against all Defendants except Officer Koons are being dismissed, there is only one Defendant remaining in this case.  Since a conspiracy requires an agreement between two or more participants, and only one remains in this case, both civil conspiracy claims will be dismissed.

**I.   Amendment of the Complaint Would Be Futile**

A district court should generally provide a pro se plaintiff with leave to amend unless amendment would be inequitable or futile.  See Grayson v. Mayview State Hosp., 293 F.3d 103, 114 (3d Cir. 2002).  Here, Plaintiff will not be given leave to amend because amendment would be futile.  The claims dismissed here are based on legal impediments or factual matters agreed to by Plaintiff.  These deficiencies cannot be cured based on the law and facts of this case.  Thus, futility precludes granting leave to amend the Complaint.

**V.   CONCLUSION**

Defendant Jenkins' Motion to Dismiss (Doc. No. 17) will be granted.  The remaining Defendants' Motion to Dismiss (Doc. No. 20) will be granted in part and denied in part.  All claims against Defendants Officer Lobach, the City of Allentown, the Allentown Police Department, Chief Fitzgerald, Sergeant McAfee, and Jenkins will be dismissed in their entirety.  Plaintiff's claims against Officer Koons in his individual capacity set forth in Counts Two, Five, and Seven, for excessive force, assault and battery, and intentional infliction of emotional distress, will survive the Motion to Dismiss and not be dismissed.  All other claims against Officer Koons will be dismissed.  An appropriate order follows.